UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Case No. 4:07CR00061 DJS (AGF) |
| ANGELA DAWN KONKOL, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court on the pretrial motions filed by Defendant, Angela Dawn Konkol. Pretrial matters were referred to the undersigned United States Magistrate Judge under 28 U.S.C. § 636(b). Defendant filed a motion to suppress evidence and statements; a motion for disclosure pursuant to Rules 404(b) and 609; a motion to compel the government to disclose favorable evidence; and a motion for government agents to retain rough notes (Doc. Nos. 74-77, respectively).

An evidentiary hearing was held on February 28, 2007. The government was represented by Assistant United States Attorney John T. Davis. Defendant was present and represented by her attorney, Eric W. Butts. At the hearing, Defendant acknowledged that she was not claiming a possessory interest related to any evidence seized, and therefore was not seeking to suppress any physical evidence. As such, her motion to suppress is limited to the statements made to government agents. In light of the

government's response to Defendant's discovery-related motions, Defendant also acknowledged that no further action by the undersigned was necessary with regard to the discovery motions.

With regard to Defendant's motion to suppress statements, the government presented the testimony of Special Agent (SA) Matt McKnight, who has been employed as a Special Agent for the Drug Enforcement Administration (DEA) for approximately three years and eight months. Prior to his employment with the DEA, he was a volunteer officer with the Shawnee County Sheriff's Department, for approximately 18 months. The witness was cross-examined extensively by defense counsel. Based on the testimony and evidence adduced and having had an opportunity to observe the demeanor and evaluate the credibility of the witness, the undersigned makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

SA McKnight is detached to a multi-jurisdictional task force in St. Louis County. The investigation at issue began on January 9, 2007, when another task force agent, Jerome Paszkiewicz, received information from a confidential source pertaining to an individual named Sean Taylor, who is a co-Defendant herein. When the task force receives such information, the group decides what targets are worth investigating that day. Based on the information received, the task force began an investigation and surveillance at the Days Inn in Eureka, Missouri. From a review of the motel records, the task force learned that Sean Taylor had checked into two rooms, rooms 421 and 423, at

2

2:30 a.m. on January 9, 2007. He provided a Detroit, Michigan address, and listed a white van with Ohio license plates as his vehicle.

SA Paszkiewicz, who was then the only agent at the motel, began surveillance on the van with the Ohio plates (the "Ohio Van"), and noticed that there was another van there with Oklahoma plates (the "Oklahoma Van"), which appeared to be related. Later that morning, both vans left the motel lot, and the agent observed an individual, later identified as Defendant Angela Konkol, riding in the front seat of the Ohio Van. SA Paszkiewicz followed the vans, which drove to a Drury Inn at Bowles and I-44. The subjects were later observed leaving the Drury Inn, with Defendant Konkol riding in the in Oklahoma Van, and SA Paszkiewicz continued to follow. At one point, the Oklahoma Van in which Defendant Konkol was riding stopped at a Target store, where, for approximately one hour, Defendant Konkol and another of the individuals sat in the Starbucks coffee shop, while another individual, later identified as "Christina," remained outside. By the time the Oklahoma Van left the Target store, more agents, including SA McKnight, had joined the surveillance. The Oklahoma Van began driving erratically, and it appeared as though the occupants were attempting to observe SA Paszkiewicz's vehicle. As a result, SA Paszkiewicz terminated the surveillance on the Oklahoma Van, and the task force had no further contact with that vehicle.

At approximately 5:00 p.m. the same day, the task force received information from the police in Ohio that the Ohio Van had been reported stolen. At that time, the Ohio Van was parked in the parking lot of the Drury Hotel at I-44 and Bowles Avenue. Based

3

on this information, the task force contacted the Criminal Investigation Unit to take custody of the van, as a stolen vehicle. Approximately fifteen minutes later, the task force was advised that the Criminal Investigation Unit had searched the Ohio Van incident to its seizure and discovered 214 pounds of marijuana in the back of van. The agents continued surveillance at the Days Inn motel, but discontinued surveillance that night when they observed no further activity.

The following day, on January 10, 2007, SA McKnight, SA Paszkiewicz and others returned to the Days Inn motel. They assumed that the targets of their investigation had left, and they wanted to see if any evidence had been left behind. When the agents went to room 421, however, they found that co-Defendants Taylor and Exley were still in the room. Defendant Konkol was not present. Taylor and Exley agreed to speak to the agents, and Defendant Exley implicated the other individuals, including Defendant Konkol (whom she described based on her ethnicity), in the transport of marijuana. Exley also advised the agents that she had rented a Pontiac G-6 automobile, and she gave the agents the key and granted them permission to search the vehicle. Inside the rental car, the agents found a placard that referenced a different Drury Inn. Following their discussion with co-Defendants Taylor and Exley, both were placed under arrest and transported to the DEA office, where they were interviewed by SA McKnight and others.

Agents from the task force thereafter went to the Drury Inn referenced on the placard and began surveillance. Based upon descriptions they had obtained during the course of their investigation and surveillance, the agents located Defendant Konkol and

4

three other suspects in the lobby.  Defendant Konkol and the others got into a taxicab, which drove to the Greyhound bus station, where an unidentified female and a child got out.  Defendant Konkol and the others then took the taxi to the Galleria Mall.  At that point, in light of the information the task force had developed, the agents received instructions to arrest Konkol and others.  Defendant Konkol did not make any statements at that time.  After her arrest at the Galleria, Defendant was transported to DEA offices, where SA McKnight was already interviewing co-Defendants Taylor and Exley.

Defendant arrived at the DEA offices at approximately 2:45 p.m.  At that time there were a total of five suspects being interviewed and processed.  SA McKnight and agent Quinn Turner interviewed Defendant in one of the DEA interview rooms.  Prior to the interview, SA McKnight advised Defendant of her rights under <u>Miranda</u>, by reading her rights to her, verbatim, from a DEA Statement of Rights and Waiver, Form 13, admitted as Govt. Ex. 1.  After her rights were read to her from the form, Defendant acknowledged that she understood her rights, and agreed to speak to the agents.  She signed the waiver form, and her signature was witnessed by the agents.  The waiver portion of the form signed by Defendant acknowledged:

> I have had read to me the statement of my rights shown above.  I understand what my rights are and I elect to waive them.  I am willing to answer questions and make a statement.  I do not want a lawyer.  I understand and know what I am doing.  No promises or threats have been made to me and no pressure of any kind has been used against me.  I was taken into custody at __2:30__ A.M. _x_ P.M., on __1-10-07__, and have signed this document at __3:45__ A.M. _x_ P.M. on __1-10-07__.

At the time Defendant was advised of her rights, she and SA McKnight and Agent

Quinn were seated in a small interview room at a round table with four or five chairs. The agents were dressed in street clothes and did not have their firearms with them. Defendant did not appear to be under the influence of any drugs or alcohol, appeared to be lucid, and appeared to understand what was being said to her. No promises or threats were made to Defendant, but SA McKnight likely advised Defendant prior to her interview that if she cooperated, it would look good for her and any cooperation would be made known to the United States Attorney.

After signing the waiver form, Defendant made an oral statement to the agents. She stated that she was staying at the Days Inn with "Christina" and co-Defendant Bader, and that she was there to "hang out and party." She explained that they drove the Ohio Van to the Drury Inn that morning, but then decided not to eat at Denny's and went to a Cracker Barrel restaurant. This was consistent with the agent's surveillance. She stated that she was ultimately picked up by Christina, and they traveled downtown. As they were driving, they became concerned that they were being followed by a man in a grey car (which matched the vehicle Agent Paszkiewicz was driving). As a result, they went to a Target store for over an hour, where she sat in Starbucks, while Christina sat outside. The agents asked Defendant why they did not call the police if they thought they were being followed by someone who did not appear to be a police officer, but Defendant did not answer. Defendant stated that co-Defendant Bader had borrowed the white van. Defendant said she had planned to travel back to Ohio, and then rent a car and drive to Michigan. Defendant did not make any further statements.

# CONCLUSIONS OF LAW

### A. Statements Made by Defendant

A defendant may knowingly and intelligently waive her rights and agree to answer questions. Miranda v. Arizona, 384 U.S. 436, 479 (1966). When the prosecution seeks to introduce in evidence a statement made by a defendant while in custody, it has the burden of showing by a preponderance of the evidence that the statement was made after a voluntary, knowing, and intelligent waiver of Miranda rights by the defendant. Colorado v. Connelly, 479 U.S. 157 (1986). The court must examine the totality of the circumstances surrounding the interrogation to determine whether the waiver was the product of a free and deliberate choice, rather than intimidation, coercion, or deception, and whether the waiver was made with an awareness of the right being abandoned and the consequences of the decision to abandon it. Moran v. Burbine, 475 U.S. 412 (1986). The statement must be voluntary and not the product of any police conduct by which the defendant's will is overborne. Connelly, 479 U.S. at 170; Haynes v. Washington, 373 U.S. 503 (1963). "The requirement that Miranda warnings be given does not, of course, dispense with the voluntariness inquiry." Dickerson v. United States, 530 U.S. 428, 444 (2000). As the Supreme Court has recognized, however, "[c]ases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that law enforcement authorities adhered to the dictates of Miranda, are rare." Berkemer v. McCarty, 468 U.S. 420, 433 n.20 (1984). See Dickerson, 530 U.S. at 444.

Prior to making her statement, Defendant, who was then a 22-year old adult, was orally advised of her Miranda rights and she signed a written waiver in which she acknowledged she understood her rights and was voluntarily agreeing to waive those rights. At the time she was advised of her rights, she did not appear to be under the influence of any drugs or alcohol, or impaired in any other manner. Defendant was seated in an interview room, with two agents who were in plain clothes and were not armed, and she was not restrained in any fashion. Her statement was also made shortly after her arrest, during the daytime. Although Defendant was advised that any cooperation she offered would be made known to the United States Attorney, no promises or threats made to induce Defendant's waiver or her oral statements, and any such statements by the agents were certainly not sufficient to overcome Defendant's will  As such, based on the totality of the circumstances, the Court finds Defendant knowingly and voluntarily waived her rights and made a voluntary statement. See United States v. Castro-Higuero, 473 F.3d 880, 886-87 (8th Cir. 2007) (finding Miranda waiver and post-arrest statement made detention center, at 3:15 a.m., approximately one hour after arrest, to be valid and voluntary where substance of Miranda rights was communicated to defendant through Spanish interpreter, agent was unarmed and in street clothes, and defendant was not restrained).

Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Evidence and Statements [Doc. No. 74] be **Denied**.

**IT IS HEREBY ORDERED** that Defendant's Motion for Disclosure Pursuant to Rules 404(b) and 609 [Doc. No. 75], is **Denied as Moot**, in light of the Government's representation that it has no such evidence, and that if such evidence arises, the Government will request a pretrial ruling on admissibility well in advance of trial.

**IT IS FURTHER ORDERED** that Defendant's motion to compel the Government to produce favorable evidence [Doc. No. 76] is **Denied as Moot**, in light of the Government's representation that it currently has no such evidence, and will disclose any such evidence as it may become available.

**IT IS FURTHER ORDERED** that Defendant's motion for government agents to retain rough notes [Doc. No. 77], is **Denied as Moot**.

The parties are advised that they have eleven (11) days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir.1990).

/s/ Audrey G. Fleissig
AUDREY G. FLEISSIG
United States Magistrate Judge

Dated this 8th day of March, 2007.